UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL P. NEELON, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * Civil Action No. 12-cv-11198-IT |
| BLAIR KRUEGER and DESERT EAGLE | * |
| RESOURCES, LTD. f/k/a GARRISON | * |
| INTERNATIONAL, LTD., | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

December 5, 2014

I.  Introduction

In this action, Plaintiff Daniel P. Neelon ("Neelon") brings claims for defamation, unfair and deceptive business practices, and tortious interference with business relations. See First Am. Compl. ¶¶ 85-122 [#18] [hereinafter Compl.]. Neelon alleges that Defendants Blair Krueger ("Krueger") and Desert Eagle Resources, Ltd. ("Desert Eagle") (collectively "Defendants") made certain false statements in Canada suggesting that Neelon was facing criminal charges in Mongolia, and that these statements were published in the United States, causing significant harm to Neelon's reputation and business prospects. See generally id.

More than two years after this litigation commenced, Defendants filed a Motion to Dismiss for *Forum Non Conveniens* [#108], alleging that either Canada or Mongolia is a more convenient forum in which to litigate this suit. The court finds that, on balance, the private and public interest factors relevant to a *forum non conveniens* determination do not support dismissal in favor of either alternative forum. Defendants' motion is, therefore, DENIED.

II. Factual Background

   A.   *The Parties and Underlying Loan Agreement*

Neelon is an attorney licensed in Massachusetts. Compl. ¶ 13. In 2010, Neelon worked at the Boston-based law firm Denner Pellegrino, LLP. Id. In this capacity, Neelon participated in drafting loan documents for his client Georges Cohen ("Cohen"), a Canadian national. Id. ¶ 16. Cohen entered into a loan agreement with Garrison Asia, LLC ("Garrison Asia"), a Mongolian mining exploration company. Id. ¶ 1; Aff. Blair Krueger ¶¶ 19-20 [#108-2] [hereinafter Krueger Aff.]. Garrison Asia was a Mongolian subsidiary of Garrison International, Ltd., which is a Canadian company. Compl. ¶¶ 1, 3. Garrison International, Ltd. now operates under the name of Desert Eagle Resources, Ltd.—a named defendant in this action. Id. ¶ 7. At the time of these events, Garrison International Ltd.'s stock was listed on the Canadian TSX Venture Exchange. Krueger Aff. ¶ 29. Defendant Krueger is a Canadian national who in 2010 was the President and CEO of Garrison International. Compl. ¶¶ 7-8.

The loan was intended to provide capital for Garrison Asia's mining exploration activities in Mongolia. Id. ¶ 16. The loan's financing documents provided, as a remedy for default, that Cohen could take ownership of Garrison Asia. Id.; Krueger Aff. ¶ 23. The same provision granted a seventy-two hour right to cure any default. Krueger Aff. ¶ 23.

   B.   *The Alleged Events Underlying Defendants' Press Releases*

In February 2011 Cohen transferred all shares of Garrison Asia into his possession. Compl. ¶ 16. Neelon alleges that Cohen did so after a series of defaults and in accordance with the loan agreement's remedy provision. Id.

Defendants claim that the transfer occurred without first providing a right to cure the alleged defaults and without the knowledge of Anthony Bainbridge, who was Desert Eagle's

2

Chief Operating Officer in 2011, or Krueger, both of whom were allegedly not in Mongolia on the date of the transfer. See Aff. Anthony Bainbridge ¶¶ 44, 48 [#108-21] [hereinafter Bainbridge Aff.]; Krueger Aff. ¶ 23.

Upon discovery of the transfer, Defendants initiated a complaint against Neelon and Cohen at the Mongolian Police State Investigation Office. Compl. ¶ 28. The Mongolian police eventually decided against bringing criminal charges. Id. ¶¶ 30-32.

C. *Defendants' Allegedly Defamatory Press Releases*

On May 20, 2011, Defendants issued a press release through Marketwire.com, which has a multinational readership and offices in the United States and Canada.[1] Id. ¶ 33. The press release stated that the company stamp for Garrison Asia was taken by "two men" from its Mongolian offices "without the knowledge or permission of any of the Officers or Directors of the Company." Id. ¶ 34. The press release claimed further that the "stamp was used to transfer the ownership of the shares of Garrison Asia LLC away from the Company." Id. The release also stated that a criminal investigation into the two men's activities had resulted in the filing of criminal charges. Id. Defendants also allegedly informed "numerous people" that the two men referenced in this press statement were Neelon and Cohen. Id. ¶ 36.

Defendants issued another press release on September 23, 2011, through Marketwire.com and news.investors.com. Id. ¶¶ 56, 58. This release stated that:

> The Company also wishes to notify its shareholders with an update in regard to its News Release of May 20, 2011 concerning its statement of the unauthorized transfer of the Company's subsidiary in Mongolia that occurred in January and February 2011 that a criminal action has been filed in Mongolia against Georges Cohen, a former director of Garrison International, and Daniel Neelon, Counsel of

---

[1] According to Defendants, in April 2011, Cohen called Brian Kaine ("Kaine"), an employee with the Canadian TSX Venture Exchange, to inform him of Garrison Asia's new ownership. Kruger Aff. ¶ 31. Kaine then informed Defendants that they had to issue a press release to investors stating that Desert Eagle no longer owned Garrison Asia. Id. ¶ 32.

> Mr. Cohen, and has been assigned case number 21147156. The criminal action pending against Mr. Cohen and Mr. Neelon was filed under section 236 of the Mongolian Criminal Code which refers to a procedure which has caused substantial damage to a business entity and may be reviewed under Section 148 which is entitled "Appropriation of Property by Fraud" or Section 150 which is entitled "Misappropriation or Embezzlement of Property."

Id. ¶ 59.

Neelon also alleges that Defendants played a role in the publication of a September 24, 2011, blog entry on stockhouse.com entitled "Alleged Criminal Daniel P. Neelon," and that Desert Eagle posted financial statements on sedar.com, which referenced a "criminal action pending against Mr. Cohen and Mr. Neelon [that] was filed under the Mongolian Criminal Code." Id. ¶¶ 71, 76-77.

### D. The Parties' Claims and Defenses

Neelon claims that the press releases were defamatory and that Defendants knew or should have known that no criminal charges were pending against him in Mongolia. Compl. ¶¶ 60-63. Defendants argue that the press releases were not defamatory and that Krueger ensured all of the information in the press releases was thoroughly fact checked in Mongolia prior to publication. Krueger Aff. ¶¶ 33-34, 38-39.

### E. Neelon's Alleged Damages

According to Neelon, Defendants' statements resulted in "damages to [his] income, earning capacity, reputation, business opportunities and emotional health." Aff. P. Daniel Neelon ¶ 33 [#119-57] [hereinafter Neelon Aff.]. In particular, Neelon claims that he lost client referrals, was denied a bank loan for project financing, and that a potential law partner withdrew from plans to associate with him after learning of the press releases. Id. ¶¶ 252-56. He asserts that harm to his reputation and lost business opportunities in Boston caused his 2012 income to drop by 87% from its 2011 level. Id.

4

¶ 255.  Neelon also claims that he lost out on a lucrative mining exploration opportunity in Mongolia when his project partners ceased negotiations after hearing of his alleged criminal activity.  Id. ¶ 258.  Neelon asserts that the brunt of this harm occurred in Massachusetts.  Id. ¶¶ 252-66.

III. Procedural History

Neelon filed this suit on July 2, 2012.  On November 30, 2012, Defendants filed a Motion to Dismiss for Failure to State a Claim and for Lack of Personal Jurisdiction.  See Mot. Dismiss [#14].  On December 21, 2012 Neelon filed his Amended Complaint [#18], and in light of this amendment, on January 11, 2013, Defendants filed supplemental briefing in support of their Motion to Dismiss.  See Supplemental Mem. Supp. Def.s' Mot. Dismiss [#22].  On May 29, 2013, the court denied Defendants' motion.  See Mem. & Order. Def.s' Mot. Dismiss [#43].  Defendants then filed an Answer and Counterclaim for fraudulent conversion.  See Def.s' Answer Pl.'s First Am. Compl. [#50].

More than two years after the case began, fifteen months after the court's ruling on other dispositive motions, and after the parties have engaged in significant discovery and mediation, Defendants filed the instant Motion to Dismiss for *Forum Non Conveniens* on August 28, 2014.  See Mot. Dismiss *Forum Non Conveniens* [#108].  Defendants argue that Massachusetts is an inconvenient forum for litigating Neelon's claims and that they will face significant prejudice if forced to defend this case in Massachusetts rather than in Canada or Mongolia.  See Def.s' Mem. Law Supp. Def.s' Mot. Dismiss *Forum Non Conveniens* [#108-1] [hereinafter Def.s' Mem.].

IV. Analysis

   A. *Legal Standard*

The doctrine of *forum non conveniens* "permits 'a trial court to decline to exercise its jurisdiction . . . where it appears that the convenience of the parties and the court, and the interests of justice[,] indicate that the action should be tried in another forum.'" Royal Bed & Spring Co., Inc. v. Famossul Industria e Comercio de Moveis LTDA., 906 F.2d 45, 48 (1st Cir. 1990) (quoting Sibaja v. Dow Chem. Co., 757 F.2d 1215, 1218 (11th Cir. 1985)). A defendant seeking dismissal on the basis of *forum non conveniens* bears the burden of showing (1) that an adequate alternative forum exists, and (2) "that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000).

To demonstrate that an alternative forum is adequate, the defendant must show "that the alternative forum addresses the types of claims" brought by the plaintiff. Id. The causes of action and available remedies in an alternate forum need not be identical to those of the plaintiff's chosen forum, so long as "the parties will not be deprived of all remedies or treated unfairly." Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991) ("Mercier II"). A defendant must also show that "the defendant is amenable to service of process" in the alternative forum. Iragorri, 203 F.3d at 12. The First Circuit has explained that this requires a showing that "all parties can come within that forum's jurisdiction." Mercier II, 935 F.2d at 424 (citing In re Air Crash Disaster Near New Orleans, 821 F.2d 1147, 1165 (5th Cir. 1987)); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981) (requiring that the "alternative forum [have] jurisdiction to hear the case").

After proving the existence of another adequate forum, a party seeking dismissal on the basis of *forum non conveniens* must also show that "considerations of convenience and judicial efficiency strongly favor litigating the claim in [that] alternative forum." Iragorri, 203 F.3d at

6

12. While the standard for determining whether dismissal is appropriate is flexible, see Howe v. Goldcorp, Invs., Ltd., 946 F.2d 944, 950 (1st Cir. 1991), the Supreme Court has provided an illustrative set of private and public interest factors for courts to consider.

> The private interest factors appropriate for a court's consideration include:
>
> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; . . . all other practical problems that make trial of a case easy, expeditious and inexpensive[;] . . . [and] questions as to the enforcibility [sic] of a judgment if one is obtained.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). The public interest factors a court should consider include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft Co., 454 U.S. at 241 n.6 (1981) (internal quotation marks and citation omitted). In balancing these factors, courts must recognize that where a plaintiff has chosen his home forum there is "a heavy presumption . . . in favor" of that choice. Adelson v. Hananel, 510 F.3d 43, 53 (1st Cir. 2007); see also Gilbert, 330 U.S. at 509 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). This presumption is particularly strong where an "American forum [is] selected by American plaintiffs." Mercier v. Sheraton Int'l Inc., 981 F.2d 1345, 1355 (1st Cir. 1992) ("Mercier III").

    B.    *The Presumption in Favor of Neelon's Home Forum Applies*

Defendants argue that Neelon's choice to litigate in Massachusetts—his home forum—should not be given a presumption of convenience because he has previously filed parallel claims

against the same defendants in Canada and the Central District of California.[2] See Def.s' Mem. at 4-5; Aff. Damian R. LaPlaca, Exs. 1-3 [#108-42] [hereinafter LaPlaca Aff.]. According to Defendants, Massachusetts was Neelon's third choice of forum, and therefore is undeserving of any favorable presumption.

In Adelson, 510 F.3d at 54, the First Circuit held that existence of concurrent litigation between the parties in another forum did not support dismissal on the grounds of *forum non conveniens*. The First Circuit held that "[t]he existence of concurrent litigation is not a relevant factor to the [*forum non conveniens*] analysis," and that reliance on proceedings in another forum would "erroneously lower[] the defendant's burden of proving that the balance of factors justified dismissal of a suit from a U.S. plaintiff's choice of home forum." Id.

The U.S. plaintiff in Adelson was the defendant in the concurrent litigation. In contrast, Neelon was the plaintiff in the Canada and California cases and is also the plaintiff in this suit. Nonetheless, Adelson stands for the rule that concurrent litigation does not affect the court's *forum non conveniens* inquiry. Serial litigation that is no longer proceeding must necessarily have no greater relevance to the deterimination of a forum's convenience than concurrent litigation occurring at the same time as the case in question. Accordingly, because concurrent litigation is not relevant to determining the forums' relative convenience, the court finds that serial litigation is similarly irrelevant and the presumption in favor of Neelon's home forum applies.

    C.    *Dismissal in Favor of Canada is Unwarranted*

---

[2] Neelon and Cohen filed suit against Defendants in Canada seeking damages for lost business opportunities and defamation, see LaPlaca Aff. at Ex. 1, but Neelon later ceased his participation in that action. Neelon also brought claims for defamation and tortious interference with advantageous business opportunity in the Central District of California against Krueger, Desert Eagle, and two other defendants, see id. at Ex. 2, but later dismissed Krueger and Desert Eagle from that suit.

### 1. Defendants Have Not Met their Burden to Show Canada's Adequacy

Canada may be an adequate alternative forum for these claims. Defendants are a Canadian national and a Canadian company. See Am. Compl. ¶¶ 3-6. As such, Defendants are amenable to service of process in Canada. Moreover, Canadian law includes causes of actions similar to those in the Massachusetts action. See LaPlaca Aff. at Ex. 1 (complaint in the Superior Court of Montreal bringing claims against Defendants for damages caused by defamation and loss of business opportunities); id. at Ex. 22 (Canadian Libel and Slander Act).

Defendants have not established, however, that the action would not be barred by a statute of limitations. Despite filing this motion more than two years after the commencement of the case, Defendants do not expressly state that they would consent to waive any statute-of-limitations defenses in Canada, and do not inform the court of whether the statute of limitations for these claims, arising from statements made in 2011, has run. See Iragorri, 203 F.3d at 12 (placing the burden to prove adequacy on the defendant moving for dismissal).

### 2. Convenience and Judicial Efficiency Do Not Strongly Favor Dismissal

Having held that the Defendants failed to prove Canada was an adequate alternative forum in this case, the court does not need to reach the question of whether convenience and judicial efficiency strongly favor litigation in Canada. Nonetheless, because Defendants could waive any statute-of-limitations defense, the court addresses the questions of convenience and judicial efficiency.

#### a. The Private Interest Factors Do Not Strongly Favor Dismissal

Litigation of this suit in Canada would not significantly affect the parties' ease of access to evidence, ability to compel the attendance of unwilling witnesses, or cost of having willing witnesses appear. In Neelon's initial disclosures, he identified nine Canadian witnesses, twelve

9

American witnesses, and twenty-three Mongolian witnesses. See LaPlaca Aff. at Ex. 6 (Neelon's initial Rule 26(a) disclosure). Defendants indicate that critical witnesses may reside in Korea, Argentina, or Australia. See Bainbridge Aff. ¶ 73; Aff. Andrew Millen ¶ 13 [#108-78] [hereinafter Millen Aff.]. Given the disparate location of relevant witnesses, litigating in Canada would not significantly increase the parties' ability to ensure production of evidence or witnesses. For example, Defendants argue that the litigation relates to the truth or falsity of statements made regarding alleged acts in Mongolia, but that there is no international treaty or other method by which Mongolian witnesses could be compelled to participate in U.S. proceedings. See Def.s' Mem. at 11-12. Any issue regarding the participation of Mongolian witnesses, however, would apply with equal force were the case to proceed in Canada.

Krueger asserts further that proceeding in Canada would be more convenient because his wife is in poor health and he is acting as his son's sole caregiver. See Krueger Aff. ¶ 56. The court agrees that litigating this suit in Canada would be more convenient for Krueger, who resides in Canada. Litigating in a party's home forum, however, is almost always more convenient than litigating in a foreign forum. See, e.g., Piper Aircraft Co., 454 U.S. at 236 (stating that "it is reasonable to assume that the choice [of a home forum] is convenient"). Although Canada is more convenient for Krueger, Massachusetts is presumably more convenient for Neelon, who claims to be the sole custodian of three children without the financial means to fund foreign litigation. See Pl.'s Opp'n Def.s' Mot. Dismiss *Forum Non Conveniens*, 7, 16 n.22 [#119] [hereinafter Pl.'s Opp'n]. The court finds that Krueger's personal interest in litigating close to home is insufficient to overcome the strong presumption in favor of a plaintiff's choice of home forum.

Defendants have raised no argument about the remaining enumerated private interest factors and have not suggested other unenumerated interests apply. Accordingly, the court finds that the private interest factors do not strongly favor dismissal of this action in favor of litigation in Canada.

          *b.*  *The Public Interest Factors Do Not Strongly Favor Dismissal*

Defendants have offered no evidence about the congestion or speed of Canadian court dockets, leaving the court unable to assess the comparative efficiency of litigation in Canada and Massachusetts in general. See Mercier II, 935 F.2d at 428-29 (stating that the court should "make a comparative determination of where the case can be most quickly resolved"). Moreover, this case has already been litigated in the District of Massachusetts for over two years, and discovery is close to completion. Accordingly, even if the overall congestion of Canada's court system is less than that of the Massachusetts federal court system, at this stage in the case's development, continued litigation in Massachusetts would almost certainly reach a more expeditious result than beginning the litigation over in a different forum.

Defendants have also not shown that Canada has a stronger interest in the resolution of this controversy than does the United States. The dispute is between a resident of Massachusetts and two Canadian defendants regarding statements made in Canada and published to the United States about acts purportedly occurring in Mongolia. This is not the sort of "localized controversy" best resolved in any particular forum. Although Canada may have a strong interest in cases involving its citizens, the United States has an equally strong interest in disputes affecting its own citizens. See Rodriguez, 734 F. Supp. 2d. at 228 ("both [forums] . . . have an interest in resolving this matter, so the public interest factors are not 'significantly' tipped in favor of either." (citing Gross v. British Broad. Corp., 386 F.3d 224, 234 (2d Cir. 2004))).

11

Nor do choice-of-law considerations strongly favor litigation in Canada. The statements at issue were published in both Canada and the United States. Although the court need not dispositively rule on the choice-of-law issue at this time, "[i]n a case of multi-[forum] publication, the Restatement [of Conflict of Laws] suggests that either that law of the state of residence of the plaintiff, or the law of the state 'where the defamatory communication caused plaintiff the greatest injury to its reputation' should apply.'" See Continental Cablevision, Inc. v. Storer Broad. Co., 653 F. Supp. 451, 455 (D. Mass. 1986) (quoting Restatement (Second) of Conflict of Laws, § 150 (1971)). Accordingly, the Restatement appears to counsel in favor of the application of Massachusetts law. Moreover, even if Canadian law does apply, the First Circuit has said that "the task of deciding foreign law is a chore federal courts must often perform," and the application of foreign law should not be given "undue importance" in a court's *forum non conveniens* analysis. Mercier III, 981 F.2d at 1357 (internal alteration, quotation marks, and citation omitted).

Finally, although the facts of this case span two continents, the plaintiff is a Massachusetts citizen alleging that he was injured in Massachusetts. There is no unfairness in asking other Massachusetts citizens to serve as jurors in such a case. See Mercier II, 935 F.3d at 430 (recognizing an interest in "limiting jury duty to a community with an interest in the litigation"). Accordingly, the public interest factors do not support dismissal in favor of litigating in Canada.

> D. *Dismissal in Favor of Mongolia is Unwarranted*
>> 1. *Defendants Have Not Met Their Burden to Show Mongolia's Adequacy*

Defendants have not provided sufficient information for the court to rule that Mongolia is an adequate alternative forum. Defendants produced a copy of an exhibit, originally filed in a

parallel proceeding in the Central District of California, which purports to be a copy of Article 7.1 of the Mongolian Civil Code and sets forth a cause of action for defamation. See LaPlaca Aff. at Ex. 23. They have not, however, provided an affidavit or exhibit showing that a claim of tortious business interference is cognizable in Mongolia. See Sullivan v. Starwood Hotels & Resorts Worldwide, Inc., 949 F. Supp. 2d 324, 328 (D. Mass. 2013) (holding that the defendant failed to prove an alternative forum was adequate where proof of a cognizable claim in the alternative forum was offered only as to one of plaintiff's claims). Moreover, the exhibit is presented without any accompanying affidavit from "a person familiar with [the] law . . . [and able] to verify its reading." See id.

Defendants have also not indicated that they would consent to being amenable to Mongolian jurisdiction and have not provided any information about Mongolia's jurisdictional rules or the availability of service of process. In the absence of such information, Defendants have failed to meet their burden of proving Mongolia's adequacy. Cf. Rodriguez v. Samsung Elec. Co., Ltd., 734 F. Supp. 2d 220, 224 (D. Mass. 2010) ("According to affidavits submitted by both parties, it appears undisputed that the courts of South Korea would exercise jurisdiction over this case.").[3] Moreover, Defendants have failed again to provide information about the

---

[3] Defendants reference an order by the Central District of California which ruled, in parallel proceedings, that Mongolia was an adequate forum. That case, however, involved defendants who affirmatively consented to Mongolian jurisdiction and waived any applicable statute of limitations. See LaPlaca Aff. at Ex. 5. Defendants also note that in 2011 Neelon initiated a civil suit on behalf of Georges Cohen against Krueger in Mongolia, seeking an order for the transfer of property owned by Garrison Asia. See Krueger Aff. at Ex. 8 [#108-2]. That suit concerned loan documents signed in Mongolia and specifying that Mongolian law applied to their interpretation. See id. at Ex. 1. It also involved physical property located in the country, see id. at Ex. 8, making Mongolia's ability to assert jurisdiction over the case clear. In contrast, the instant case involves two non-Mongolian parties litigating claims about statements made in Canada and causing harm in the United States.

13

applicable statute of limitations in Mongolia or to indicate that they would consent to waiving any statute-of-limitations defense.

2. *Convenience and Judicial Efficiency Do Not Strongly Favor Dismissal*

Even if Defendants had met their burden of showing Mongolia to be an adequate alternative forum, the court finds, as an alternative ground warranting denial of Defendants' motion, that the mix of private and public interest factors do not strongly favor litigating this suit in Mongolia.

a. *The Private Interest Factors Do Not Strongly Favor Dismissal*

The inability of litigants to obtain relevant evidence and witnesses in a plaintiff's chosen forum supports dismissal for *forum non conveniens*. See Howe, 946 F.2d at 951-52 (quoting Pain v. United Technologies Corp., 637 F.2d 775, 786-88 (D.C. Cir. 1980) ("[T]he inability of both parties to obtain the full panoply of relevant . . . evidence would greatly hinder fair resolution of the dispute.")). Here, Defendants argue that the alleged wrongful transfer of company assets and criminal investigation occurred in Mongolia, and that the parties have no way of compelling the production of evidence or the participation of witnesses in that country. See Def.s' Mem. at 11-12, 14.

Defendants have not identified any documentary evidence they believe is located in Mongolia and unavailable to them. Defendants indicate that all documents related to Garrison Asia's operations are now in the possession of Neelon and Cohen.[4] Krueger Aff. ¶ 17. Defendants also include with their motion to dismiss documents purporting to be the Mongolian "[p]rosecutor's order to open the criminal case, and the prosecutor's response letters to transfer the criminal case . . . and [to] recover the licenses, stamps, assets and certificates." Id. at Ex. 13.

---

[4] Defendants also claim that Neelon has already "produced almost 10,000 pages of documents dealing almost exclusively with Mongolia." Def.s' Mem. at 2.

Accordingly, Defendants have failed to show that difficulty in obtaining documentary evidence favors dismissal.[5]

Defendants note that Neelon's initial disclosures identified twenty-three witnesses located in Mongolia that could support his claims, as compared to nine in Canada, twelve in the United States, and one in Switzerland. See LaPlaca Aff. at Ex. 6 (Neelon's initial Rule 26(a) disclosure). Defendants indicate further that one "critical" defense witness splits his time between Korea and Mongolia. See Def.s' Mem. at 15; Bainbridge Aff. ¶ 73. Another "necessary" defense witness is currently in Argentina with plans to relocate to Australia. See Def.s' Mem. at 16; Millen Aff. ¶ 13. Another is located in Canada, see Krueger Aff. ¶ 50, and the five Mongolian employees of Garrison Asia who purportedly have knowledge that the company stamp was stolen are still in Mongolia, see id. ¶ 34, Ex. 12; Bainbridge Aff. ¶¶ 66-67. According to Defendants, this shows that most relevant witnesses reside in Mongolia and cannot be compelled to participate in Massachusetts proceedings. See Def.s' Mem. at 11, 12; LaPlaca Aff. at Exs. 17, 19.

The First Circuit has held that in cases where all or most witnesses reside in an alternative forum, convenience and judicial efficiency may support litigation in that forum. See Howe, 946 F.2d at 951-52. In this case, however, the disparate locations of relevant witnesses make clear that there is no forum in which all key witnesses could be compelled to attend. Even if the case

---

[5] Defendants also argue that they are unable to fairly litigate their counterclaim for conversion of Garrison Asia's assets based on their inability to compel evidence in Mongolia. Despite now asserting that this counterclaim is compulsory and that requiring Defendants to litigate the claim in Massachusetts risks significant prejudice, Defendants waited more than a year after the filing of this claim to bring the instant motion to dismiss. Moreover, Defendants could have brought this claim in Mongolia (depending on the statute of limitations, they potentially still could), or could have filed a counterclaim to Cohen's 2011 Mongolian lawsuit seeking transfer of Garrison Asia's assets. Defendants' filing of a counterclaim for which this forum may be inconvenient does not override the presumption in favor of Neelon's home forum.

15

were litigated in Mongolia, the parties would have to seek the voluntary participation of a significant number of important witnesses.[6]

The inability to compel the participation of some or all of the twenty-three Mongolian witnesses identified by Neelon as individuals he may use to support his claims is given little weight where, despite having litigated this case for more than two years and having conducted significant discovery, Defendants have made no showing that they asked these witnesses to appear voluntarily. To the extent that Neelon seeks to introduce these individual's testimony through video deposition taken within the discovery schedule, Defendants will have had an opportunity to cross-examine the witnesses at a noticed deposition. Moreover, the five Mongolian witnesses identified by Defendants as critical to their defense share cumulative knowledge of a single alleged event—the taking of Garrison Asia's company stamp. Accordingly, despite the numeric majority of potentially relevant witnesses in Mongolia, the court finds that the inability to compel Mongolian witnesses to participate does not strongly favor dismissal.

Defendants further note that where critical witnesses do not speak English, and the court believes that "the language barrier would prevent an American jury from evaluating their credibility effectively," this fact favors dismissal. Iragorri, 203 F.3d at 16. In this case, however, proceeding in any forum will require the use of translation. If the case continues in Massachusetts, the five former Mongolian Garrison Asia employees who allegedly know that the

---

[6] Neelon presents an affidavit from a Monoglian lawyer, Zagdsuren Sukhbaatar, who states that under Mongolian law police and prosecutorial officials cannot be compelled to participate as witnesses in Mongolian civil litigation. See Aff. Zagdsuren Sukhbaatar ¶ 21 [#119-14]. Because Defendants do not contest this claim, the court accepts it as true for purposes of this motion. See Rodriguez, 734 F. Supp. 2d at 228. Accordingly, even if the case was litigated in Mongolia, Defendants would presumably have to seek the voluntary participation of any Mongolian government officials with relevant knowledge about the alleged criminal investigation and charges.

16

company stamp was stolen would have to testify through translation. See Krueger Aff. ¶ 15. In contrast, if the case was litigated in Mongolia, all U.S and Canadian witnesses not fluent in Mongolian—presumably including Neelon, Krueger, Kaine, Bainbridge, and Andrew Millen, who was a project manager for Garrison Asia—would have to testify via translation.

On balance, the court finds that the need for Mongolian witnesses to present testimony through use of a translator does not significantly threaten the fairness of this litigation in Massachusetts. The five Mongolian witnesses identified by Defendants as critical to their case share relevant knowledge of a single event. See id. ¶ 34, Ex. 12; Bainbridge Aff. ¶¶ 66-67. English-speaking witnesses, including Anthony Bainbridge, also share this knowledge. See Bainbridge Aff. ¶¶ 35-49 (describing Neelon's alleged taking of the company stamp and the ensuing production of documents transferring ownership of Garrison Asia). The court believes that litigation in Mongolia, where both parties would have to testify via translation, would risk greater issues of juror confusion and difficulties in judging credibility. See Iragorri, 203 F.3d at 16 (recognizing that in either forum there would be some difficulty in ensuring live testimony from all relevant witnesses, and relying on the district court's discretion to make the "judgment call" of which forum would be less problematic).

Defendants identify no other private interest factor that would make litigation of this suit in Mongolia more "easy, expeditious, or inexpensive." Gilbert, 330 U.S. at 508. Moreover, both parties have identified familial interests that favor litigating the case close to their respective homes. While Krueger will be relatively more inconvenienced litigating in Massachusetts as opposed to Canada, his caregiving duties cut even more strongly against litigating in Mongolia. Further, the parties reside in Toronto and Massachusetts, respectively. Requiring both parties to travel to Mongolia to litigate this suit would not appear to serve the interests of cost-effective

17

resolution. In addition, in the two years this case has been litigated the court has ruled on other dispositive motions, and the parties have engaged in significant discovery. This progress towards resolution suggests that starting anew in a different forum would also not be expeditious or cost effective for the parties.

Ultimately, the court finds that although the private interest factors suggest some inconvenience in Massachusetts, much of the same inconvenience would remain even if the case proceeded in Mongolia. As such, the private interest factors do not *strongly* indicate that dismissal is warranted.

### b. *The Public Interest Factors Do Not Strongly Favor Dismissal*

Defendants do not present any evidence of the relative congestion or speediness of Mongolia's civil docket as compared to the docket of the Massachusetts federal court. Without this information, the court is unable to compare the relative efficiency of litigating in these two forums. See Mercier II, 935 at 428-29. Moreover, whatever the relative speed of the Mongolian court system, the timing of this motion again indicates that continued litigation in Massachusetts would be more efficient. The case had already progressed for more than two years at the time of Defendants' motion, and starting litigation again in an alternative forum would almost certainly take more time than resolving the case in Massachusetts.

In addition, this case is not "localized" in Mongolia. To the contrary, the key causes of action arise from statements made in Canada and allegedly causing reputational and economic harm in the United States. See Neelon Aff. ¶¶ 248-60.[7] Although the alleged factual predicate

---

[7] Defendants reference a coal-mining opportunity in Mongolia allegedly worth $240 million to $400 million as proof that the majority of Neelon's injuries actually occurred in Monoglia. See Def.s' Mem. at 14. Neelon, however, attests that he conducted negotiations for this opportunity from Barnstable, Massachusetts and that any money received would have been reported and taxed in Massachusetts. Neelon Aff. ¶ 258. The court need not make a determinative ruling on the scope of damages at this time, but notes that for any claimed damages it is Neelon that bears

18

underlying these statements occurred in Mongolia, Mongolia's interest in the parties and cause of action is minimal.

The court also finds that Mongolian law would not govern this dispute. In support of the application of Mongolian law, Defendants point towards the loan documents signed by Krueger and Cohen, which included a clause stating that "interpretation of this Secured Promissory Note . . . is governed by the laws of the country of Mongolia." See Krueger Aff. at Ex. 1. The instant dispute, however, focuses on public statements alleging that Neelon and Cohen stole a company stamp and were under criminal investigation. Defendants do not identify any dispute as to the interpretation of the note.

Further, an interest in not tasking jurors with deciding cases of which there is little localized interest disfavors dismissal of this case. No party to this litigation is Mongolian, the press releases were issued outside of Mongolia, and the harm is not alleged to have principally arisen in Mongolia. In contrast, the case involves a Massachusetts citizen and alleged injury occurring in the United States. Comparatively, Massachusetts has a stronger interest in this case, and therefore resolution by its jurors is less inconvenient.

III. Conclusion

For the foregoing reasons, the court finds that dismissal of this action is not warranted in favor of litigating either in Mongolia or in Canada. Defendants' Motion to Dismiss for *Forum Non Conveniens* [#108] is DENIED.

IT IS SO ORDERED.

December 5, 2014 /s/ Indira Talwani  
United States District Judge

---

the burden of proving the nexus between his harm and Defendants' allegedly defamatory statements. If evidence of the reason why this business opportunity was lost is not in Massachusetts, any difficulty in gathering that evidence would prejudice Neelon, not Defendants.