# United States District Court
# District of Massachusetts

DANIEL P. NEELON,
    Plaintiff,

v.                                     CIVIL ACTION NO. 12–11198-IT

BLAIR KRUEGER,
DESERT EAGLE RESOURCES, LTD.,
    f/k/a GARRISON INTERNATIONAL, LTD.,
    Defendants.

# *MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS, PRIVILEGE LOG, OR A FINDING OF PRIVILEGE WAIVER (#147)*

COLLINGS, U.S.M.J.

    After the defendants filed their motion to compel (#147), the plaintiff did produce a privilege log. *See* #165-1. Accordingly, the essential dispute, which was argued before the Court on December 2, 2014, is whether the privilege log comports with the requirements of Rule 26(b)(5)(A)(ii), Fed. R. Civ. P., and if

not, whether the plaintiff will be deemed to have waived any claims of privilege.

The plaintiff has the burden of establishing his entitlement to claim the privilege. *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 71 (1st Cir. 2011) (citing *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003), *cert. denied,* 133 S.Ct. 43 (2012)). The burden is codified in Rule 26(b)(5)(A), Fed. R. Civ. P., which requires that a party invoking the privilege to "expressly make the claim" and further to:

> describe the nature of the documents, communications, or tangible things not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A)(ii).

Case law has further refined these requirements. As the First Circuit has written:

> It is clear beyond hope of contradiction that the party seeking to invoke the attorney-client privilege must carry the devoir of persuasion to show that it applies to a particular communication and has not been waived. *See In re Keeper of the Records,* 348 F.3d at 22. Whatever quantum of proof is necessary to satisfy this obligation, a blanket assertion of privilege is generally insufficient. *See In re Grand Jury Proceedings,* 616 F.3d

> 1172, 1183 (10th Cir.2010); *In re Grand Jury Matters,* 751 F.2d 13, 17 n. 4 (1st Cir.1984); *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983). Determining whether documents are privileged demands a highly fact-specific analysis—one that most often requires the party seeking to validate a claim of privilege to do so document by document. *In re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir.2000); *In re Grand Jury Matters,* 751 F.2d at 17 n. 4.

*In re Grand Jury Subpoena,* 662 F.3d at 71.

Further,

> To properly [*sic*] demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document. Fed. R. Civ. P. 26(b)(5), Advisory Committee Notes, 1993 Amendments; *see von Bulow* [*by Auersperg v. von Bulow,* 811 F.2d 136,] 144 [2nd Cir. 1987]; *Bennett v. Fieser,* 1994 WL 542089, *3 (D. Kan. 1994). The summary should be specific enough to permit the court or opposing counsel to determine whether the privilege asserted applies to that document. *Bennett, supra,* at *3. Rule 26(b)(5) was intended to help reduce the need for an *in camera* examination of documents. *See* Fed.R.Civ.P. 26(b)(5) Advisory Committee Notes, 1993 Amendments. Thus, the failure to supply the relevant information may result in a denial of the privilege. *See Labatt Ltd.* [*v.*

3

*Molson Breweries,* 1995 WL 23603 (S.D.N.Y. June 20, 2005)].

*Burns v. Imagine Films Entertainment, Inc.,* 164 F.R.D. 589, 594 (W.D.N.Y., 1996).

When judged according to the Rule and this case law, plaintiff's privilege log is manifestly inadequate. The first problem is that the plaintiff[1] does not assert the privilege as to individual documents but rather as to categories of documents. As discussed, *infra,* this is no more than a variant of a blanket assertion of the privilege, which, as noted, does not comply with the requirements of the law. Secondly, what has been revealed in the log comes nowhere close to meeting the burden of establishing an entitlement to the privilege. A review of what plaintiff has submitted in the log serves to make the point.

### Section A (#165-1, pp. 4-12)

The Court shall quote the log as to Section A, para. 1 in its entirety because it is indicative of the rest of the log. It reads:

> Communications between Plaintiff, as client Cohen's

---

[1] The Court uses the term "plaintiff" purposely since plaintiff's counsel admitted at oral argument that the decision as to which documents to withhold was made by the plaintiff, not plaintiff's counsel.

> legal counsel, and client Cohen regarding the terms, negotiations and drafting of the Secured Promissory Note, Share Transfer Agreement, Document Management Agreement, and related documents in which client Cohen was lender and Defendant Garrison International was the owner of the borrower Garrison Asia (with Defendant Krueger, the CEO of both Defendant Garrison International and Garrison Asia), approximate time period October 2010 - December 2010. Privileges: Attorney-client privilege, Rule 502(b)(1); and work product.

#165-1, p. 4.

There are several points to be made. Besides being what amounts to a blanket assertion of the privilege as to communications between Cohen and/or the plaintiff, there is precious little to indicate that the communications involved the furnishing of legal (as opposed to business or financial) advice, much less any basis on which to test the assertion of the privilege.

The other categories suffer from the same deficiency. While there is reference to "legal advice" in Category A-2 (#165-1, at p. 5) in the last phrase, i.e., ". . . and related documents and their advice on certain legal issues to client Cohen . . .", it is obvious that insufficient information has been provided to enable the defendants to assess the privilege claim. Category A-9 (#165-1, p. 7) is a bit more narrow dealing as it does with "advice" ". . . related to a lawsuit

filed by Mongol Associates for Garrison Asia against Defendant Krueger and Anthony Banbridge on or about April 26, 2011" but there are no specifics as to the communications as required. *Burns,* 164 F.R.D. at 594. Put another way, the log as to these communications is not as inadequate as other entries, but is still inadequate. The same is true of Category A-10, A-11, A-12, A-13, A-14, A-15, A-16, A-17, A-19, A-20 and A-21. (#165-1, pp. 7-11). Lastly, there is nothing to indicate the communications described Category A-18 involved legal advice; rather it seems to deal with locating documents.

*Section B (#165-1, pp. 12-14)*

The descriptions of the communications in Category B, which is entitled "Communications with Mongol Advocates as Legal Counsel for Plaintiff or an Entity of which he is Executive Director," fare no better. Again, no specific communications are listed, so there is no way to test the assertions of privilege as to particular documents. While it is entirely possible (and perhaps probable) that a valid assertion of privilege could be demonstrated with respect to the so-called "SIO complaint" and "SIO investigation," without a specification of documents, it is impossible to make a judgment. Further, the line between business and legal advice is not drawn; one paragraph (para.7, p. 13) speaks of

communications "concerning business legal issues."

*Sections C & E (#165, pp. 14-20)*

Section C is entitled "Communications with Paralegal, Translator, Representative Agent, and Employee Ariunaa Tsogt," and Section E is entitled "Communications Between Plaintiff, Through Ariunaa Tsogt, and D. Maisuren." In addition to the blanket assertion problem, there is no proof that the persons Tsogt and Maisuren are lawyers. Communications with them, however, may be protected as work-product, but, again, there is no way to discern which of the communications, if any, are protected because there is no specification of communications.

*Section D (#165, pp. 19-20)*

Section D is entitled "Communications between Plaintiff and his Litigation Counsel." Paragraph 1 refers to communications between the plaintiff and Attorney Andrews, his counsel of record in this case. If all of these communications were in connection of the instant litigation, the Court would not require a privilege log unless the defendants indicated that they sought discovery of these communications and demonstrated some reason why the attorney-client privilege would not apply. The Court views such

communications as presumptively privileged.

Section D, para. 2 speaks of communications between plaintiff and his "California litigation counsel" and paragraph 3 speaks of communications between plaintiff and "his former Quebec counsel." The Court has no idea what the subject of these communications were much less whether they involved legal advice. This is another example of a blanket invocation of the privilege.

### Section F (#165-1, p. 20)

To the extent that the privilege is claimed as to communications between plaintiff and his counsel in the instant litigation, the Court, as previously stated, views these communications as presumptively privileged. *See* p. 7, *supra*. To the extent that they refer to other communications *vis-a-vis* plaintiff's "California case," what is presented is a blanket invocation.

### Sections G, H, I, J, K (#165-1, pp. 21-22)

Again, these are blanket invocations.

In sum, other than communications between plaintiff and his attorney in the instant litigation concerning same, the blanket invocations of privileges and protections not only make it impossible for defendants to assess the validity of the assertions of the privilege or protection, it also makes it impossible for the

Court.

The Court has read the Declaration of the plaintiff (#165-14) and notes his statement (at p. 14) that it took him "three full working days" to prepare the privilege log which he filed in this case. Before beginning that undertaking, it would have behooved plaintiff to review the law as to what was required in a privilege log. If he had done so, he would have realized that any time spent compiling what was ultimately produced in the way of a privilege log was wasted.

To be clear, the Court is not ruling that the communications were not privileged. Some or even a majority may be. What the Court is ruling is that by failing to file an adequate privilege log, plaintiff has failed to meet his burden of proving that the communications are privileged or protected.

In this situation, with the exceptions noted as to communications between his counsel in the instant litigation about the instant litigation, plaintiff has, by failing to produce an adequate privilege log, waived any privileges or protections which were asserted. *Aurora Loan Services, Inc. v. Posner, Posner & Associates, P.C.,* 499 F. Supp.2d 475, 478-79 (S.D.N.Y., 2007) (citing *United States v. Construction Products Research, Inc.,* 73 F.3d 464, 473 (2nd Cir. 1996)

("Failure to furnish an adequate privilege log is grounds for rejecting a claim of attorney client privilege.")).

The Court assumes it has discretion to give the plaintiff an opportunity to furnish an adequate privilege log, but in the present circumstances, that option is not appropriate. First, the privilege log should have been produced when plaintiff responded to defendants' requests for production of documents on December 13, 2013. Instead, the log (#165-1) was not produced until November 21, 2014. Second, the case has now progressed to the point where discovery is closed with the limited exceptions listed in the trial judge's Order (#213) of December 16, 2014, and as to those limited exceptions, the discovery must be completed by January 31, 2015. Due to the plaintiff's delay in producing the log, there simply is not time to have a new privilege log prepared and then have the subsequent litigation over the adequacy of that log and the validity of the assertions take place.

This result is entirely caused by plaintiff's delay; the privilege log should have been produced on December 13, 2013 or shortly thereafter, and certainly well before March 7, 2013 when Judge Saylor granted a stay (which lasted until August 7, 2013). At the very least, plaintiff should have filed a motion to

extend the time for filing the log rather than waiting until November 21st after the defendants filed a motion to compel the production of a log.

To reiterate, the Court rules that by failing to produce an adequate privilege log, the plaintiff has waived the attorney client privilege and the work product protections and any other privileges asserted. Accordingly, the plaintiff is ORDERED, **_on or before Friday, January 16, 2015,_** to produce all documents which are responsive to the defendants' document requests and which have been withheld on the basis of any privilege or protections. The only exceptions are those contained in the within Memorandum and Order, Etc., *supra,* at pp. 7-8. This disposition makes it unnecessary to determine whether waiver has occurred as a result of selective disclosure of privileged or protected materials.

*/s/ Robert B. Collings*
ROBERT B. COLLINGS
December 19, 2014.　　United States Magistrate Judge