UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIEL P. NEELON,

            Plaintiff,

v.                                                          Civil Action No. 12-cv-11198-IT

BLAIR KRUEGER and DESERT EAGLE
RESOURCES, LTD., f/k/a GARRISON
INTERNATIONAL, LTD.,

            Defendants

ORDER ON NON-PARTY GEORGES COHEN'S MOTION FOR PROTECTIVE
ORDER PROTECTING ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS (#286)

July 14, 2015

CABELL, U.S.M.J.

## I.      INTRODUCTION

Plaintiff Daniel P. Neelon is an attorney.  He alleges that defendants Blair Krueger and

Desert Eagle Resources (collectively "the defendants") published false statements about him to

retaliate for Neelon having helped a client, non-party Georges Cohen ("Cohen"), to enforce

Cohen's rights under a promissory note.  (Dkt. No. 1)   Before the Court is Cohen's Motion for

Protective Order, (Dkt. No. 286), which was filed on April 7, 2015.  Cohen's motion arises from

a discovery dispute between the plaintiff and the defendants regarding the sufficiency of the

plaintiff's privilege log in this case.  On December 19, 2014, the magistrate judge found that the

plaintiff had waived any privilege due to an insufficient privilege log, and accordingly ordered

the plaintiff to produce a number of categories of documents the plaintiff had previously

withheld as privileged.  (Dkt. No. 217)  The plaintiff objected and the district judge issued an

order largely affirming the magistrate judge's order.  However, because a number of the

documents appeared to involve attorney-client communications between the plaintiff and a

number of his clients, including Cohen, the Court determined that the plaintiff's clients should be

afforded an opportunity to assert any privilege claims they might have with respect to the

documents the plaintiff has been ordered to produce.  The Court directed the plaintiff to notify

his clients regarding the potential production of their privileged documents in this case and set an

April 2015 deadline for the plaintiff's clients to request a protective order preventing the

production of their documents.  (Dkt. No. 259)  Cohen was the only client to respond.

Cohen seeks a protective order preventing disclosure of the documents listed in the

privilege log he submitted along with his motion, as well as an order prohibiting Cohen and the

plaintiff from being compelled to testify regarding the contents of the documents.  These

documents fall roughly into five categories, discussed in more detail below, referenced as

categories A-E.  Having considered the parties' arguments, the evidence submitted and the

relevant law, the Court finds that all of the documents identified in the privilege log that fall into

categories A-D are privileged, and that the privilege has not been waived.  The motion for a

protective order is therefore ALLOWED with respect to those documents.  With respect to the

documents underlying category E, the Court similarly finds that the majority of the documents

also are privileged and may be withheld.  However, Cohen has not met his burden of proving

that the documents Bates-stamped PL-0209, PL-0221, PL-0433-509, PL-0954, PL-2144, PL-

2158, PL-3169-69A, PL-3199-3200, PL-3201-03, PL-3204, PL-3205-09 and PL-3614 are

privileged and his motion with respect to those documents is therefore DENIED.  The reasons

for this ruling are set forth below.

**II.    ANALYSIS**

Upon a showing of "good cause," the Court may issue a protective order "to protect a

party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed.

R. Civ. P. 26(c).  The Court has "broad discretion" to decide "when a protective order is

appropriate and what degree of protection is required."  *Poliquin v. Garden Way, Inc.*, 989 F.2d

527, 532 (1st Cir. 1993).  Cohen seeks an order preventing the disclosure of the documents listed

in the privilege log attached as an exhibit to his Motion for Protective Order.  (Dkt. No. 287)

Cohen's privilege log divides the documents into five categories.  The first four

categories relate broadly to an entity called Garrison Asia, and mainly consist of communications

between the plaintiff and Cohen, or the plaintiff and other attorneys representing Cohen.  The

subject matters include a loan negotiation and closing (category A), the loan default and default

remedies (category B), a criminal investigation by Mongolian officials (category C), and a

lawsuit filed in Montreal, Canada (category D).  The fifth category, category E, relates to

communications made in connection with an entity called GC International Investments, LLC

(GC International).  These communications consist of exchanges between Cohen and the

plaintiff, or Cohen or the plaintiff and other individuals.

As the party asserting the attorney-client privilege, Cohen bears the burden of showing

that each document on the log is privileged.  *Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st

Cir. 2012) (citing *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 449 Mass. 609, 870

N.E.2d 1105, 1114 (Mass. 2007)).  Because this is a diversity action, state law governs the scope

and application of the asserted privileges.  *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir.

2000); Fed. R. Evid. 501.  In Massachusetts, the attorney-client privilege protects "(1) all

confidential communications (2) between a client and [his] attorney (3) undertaken for the purpose of obtaining legal advice." *Suffolk Constr. Co. v. Division of Capital Asset Mgt.*, 449 Mass. 444, 448, 870 N.E.2d 33 (2007). To meet his burden of proof, Cohen must establish each of these elements, including the existence of an attorney-client relationship. *Savoy v. Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346, 351 (D. Mass. 1998). Under Massachusetts law, an attorney-client relationship can be formed by express agreement or by implication where: "(1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *In re Mahoney Hawkes, LLP*, 334 B.R. 41, 50 (Bankr. D. Mass 2005)(citing *Sheinkopf v. Stone*, 927 F.2d 1259, 1264 (1st Cir.1991); *DeVaux v. American Home Assur. Co.*, 387 Mass. 814, 444 N.E.2d 355, 357 (1983)). The key issue is whether the potential client reasonably believed that the attorney was representing him in a legal matter. *Id.*

When a party withholds documents on the basis of the attorney-client privilege, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). Generally, this is accomplished by serving a privilege log that separately lists each document, specifies who created the document and all recipients, and concisely states the basis for the claim of privilege. *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co*., 240 F.R.D. 44, 47 (D. Conn. 2007).

In short, the relevant inquiry here is twofold. The initial question is whether the party asserting the claim of attorney-client privilege has demonstrated the existence of an attorney

client relationship.  If so, the inquiry turns to whether the party has provided a log that is sufficient to assess the privilege claim.

### A.    Did the Plaintiff Act as Cohen's Attorney?

Turning to the first question, Cohen has submitted a sworn declaration detailing the scope and duration of his client relationship with the plaintiff.  (Dkt. No. 287-6)  The declaration states that Cohen initially hired the plaintiff in late 2010 pursuant to a retainer agreement with Cohen's firm at that time, Denner Pellegrino LLP, and that the representation continued for "lengthy periods of time and for multiple matters."  It is not clear if there was an express agreement as to the subsequent representations.  Cohen avers that the plaintiff represented him during the time periods covered by his privilege log as follows:

- Between October 2010 and January 2011, the plaintiff represented Cohen in negotiating a loan to Garrison Asia, drafting the loan documents and providing advice on alleged defaults under the loan agreement.  (Categories A and B)

- Between November 2010 and February 2011, the plaintiff, acting as Cohen's American counsel, communicated with Cohen's international counsel regarding the loan and alleged defaults.  (Category B)

- Between February 2011 and May 2011, and acting as Cohen's American counsel, the plaintiff worked with Cohen and his international counsel regarding a possible "global resolution" of the Garrison Asia matter.  (Category B)

- Between May 2011 and December 2012, Cohen and the plaintiff were joint targets in an investigation by Mongolian authorities allegedly instigated by the defendants. The plaintiff and Cohen worked together with Cohen's counsel to coordinate a response.  (Category C)

- The plaintiff subsequently discussed aspects of the foregoing matters with Cohen's Canadian counsel, to assist Cohen and his counsel in the Montreal litigation. (Category D)

- Between January 2014 and June 2014, the plaintiff represented Cohen in an undisclosed matter.

By contrast, Cohen's declaration with respect to GC International (category E) does not aver that the plaintiff represented him in connection with that entity. On the contrary, the declaration avers that Cohen and the plaintiff "embarked upon a new venture" and formed the commercial investment entity together in February 2011. The declaration further explains that Cohen and the plaintiff own approximately 75% and 25% of GC International, respectively. At no point does Cohen ever aver that the plaintiff acted as his attorney with respect to any matters involving GC International. Similarly, Cohen submits a declaration by the plaintiff which, in addition to including information on the plaintiff's bar admissions, work history and areas of professional competence, describes the plaintiff as a co-owner and "executive director" of GC International. Moreover, Cohen's counsel at the hearing acknowledged that in identifying the privileged GC International related communications contained in category E, there was no real effort to distinguish between communications which were primarily business in nature rather than legal in nature. On the basis of this information, then, it would appear that Cohen and the plaintiff were for all intents and purposes business partners in GC International. At a minimum, there is no meaningful evidence to suggest that the plaintiff was acting as Cohen's attorney with respect to any communications between them in category E.

For their part, the defendants have not pointed to any evidence that is inconsistent with or refutes the evidence that Cohen submitted. To support their argument that the plaintiff was not

acting as Cohen's attorney, the defendants rely primarily upon the fact that Cohen obtained local litigation counsel regarding the proceedings in Mongolia and Canada and, in particular, point to Cohen's deposition testimony that the plaintiff was "not my attorney at that time on this case [in the Mongolian litigation]." However, Cohen's employment of one or more other attorneys at various times during this general time period does not automatically or necessarily mean that he did not also continue to enjoy an attorney client relationship with the plaintiff. In that regard, the plaintiff is a transactional attorney licensed in the United States and he almost certainly could not within the bounds of his professional and ethical responsibilities represent Cohen in foreign litigation matters. Moreover, it is understandable why primary counsel in these foreign matters might be interested in obtaining advice and assistance from the attorney who was actually involved in the events underlying those cases. Cohen's affidavit explains the role that the plaintiff played as attorney as well as the interplay between the plaintiff's work and that of Cohen's international counsel.

Finally, the fact that the plaintiff was functionally a co-party of Cohen's in the Mongolian investigation and during his time as a party in Cohen's Canadian lawsuit against the defendants also does not disprove the existence of an attorney-client relationship. Both the investigation and the Canadian lawsuit arise from the Garrison Asia loan transactions. The investigation allegedly resulted from a complaint by the defendants that Cohen and the plaintiff had "stolen" Garrison Asia from the defendants. The Canadian litigation includes claims related to the defendants' allegedly false statements to Mongolian authorities. Cohen's declaration and privilege log demonstrate that he believed that the plaintiff's role in these two matters was primarily to provide Cohen's international counsel with information about the loan transactions. A client's former transactional counsel can convey privileged information about a transaction to the client's

current litigation counsel without waiving privilege. *Murray v. Board of Ed. of City of New York*, 199 F.R.D. 154, 155–156 (S.D.N.Y. 2001)(no waiver when a privileged communication is disclosed in another communication that is itself privileged). To the extent that the plaintiff's discussions with Cohen's international counsel during this period went farther than discussing the plaintiff's prior representation of Cohen, Massachusetts recognizes a common interest doctrine that allows for such discussions to remain privileged. See *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 449 Mass. 609, 870 N.E.2d 1105, 1114 (Mass. 2007)(recognizing common interest doctrine that prevents waiver of otherwise privileged communications shared with third party who has a common legal interest). Because the plaintiff was, himself, a subject of the Mongolian investigation, he shares with Cohen a common legal interest in dealing with the impact of that investigation.

In sum, Cohen has established that the plaintiff acted as his attorney with respect to the time periods and subject matters covered by the communications in categories A-D of his privilege log. With respect to those in category E, however, Cohen has not established that the plaintiff acted as his attorney with respect to GC International, although the privilege log does reflect category E communications involving other attorneys other than the plaintiff (which might still be protected provided the log is sufficient to assess the privilege claim).

### B.  Is Cohen's Privilege Log Sufficient?

Cohen has provided a lengthy privilege log which, in the Court's view, complies with Rule 26 and the relevant case law. The log provides the date, sender, recipients, subject matter and claimed privilege for each document for which he seeks a protective order. As such, the information provided in the log and Cohen's affidavit detailing the nature of the attorney-client relationship is adequate to allow the Court to assess Cohen's privilege claims with respect to the documents in categories A through D. *See In Re Grand Jury Subpoena*, 274 F.3d 563, 574 (1st

Cir. 2001)(rejecting argument that former corporate officers could not prepare a privilege log for corporate documents not in their possession because "[p]rivilege logs do not need to be precise to the point of pedantry" and require only that a party "do the best that he reasonably can to describe the materials to which his claim adheres").  The Court accordingly finds that those documents are privileged.

With respect to the GC International related documents in category E, some of them reflect communications between the plaintiff and Cohen.  As discussed above, the evidence suggests that the plaintiff was Cohen's business partner in GC International and was not providing legal advice as Cohen's or GC International's attorney.  By definition, the attorney-client privilege protects communications discussing legal advice.  *America's Growth Capital, LLC v. PFIP, LLC,* No. 12-12088, 2014 U.S. Dist. LEXIS 38405, *6-*7 (D. Mass. Mar. 24, 2014)("A key component of the privilege is that communications with the attorney must call upon the attorney in his or her capacity as a professional legal adviser.")(citing *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995).  Business advice is not privileged.  *Id*. at *7 (citing *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F.  Supp. 491, 510 (D.N.H. 1996)).  Because there is no evidence that the plaintiff represented GC International or Cohen with respect to GC International, it follows that Cohen has not met his burden of showing a privilege with respect to those communications between himself and the plaintiff, or communications between the plaintiff and others, unless the log identifies another attorney whose legal advice is being discussed.

In that vein, a review of the log with respect to category E communications between Cohen and one or more entities, or the plaintiff and one or more entities, reveals that the log in most instances specifically identifies an attorney other than the plaintiff whose legal advice is

being discussed in a particular document.  Accordingly, where that is the case, the log is sufficient with respect to those communication and the communications may be withheld as privileged.

But, there are a small number of category E communications where the log identifies the parties to the communications by name only but does not indicate their title or role.  As a result, it is just not possible to determine whether the parties to the communications are employees of GC International, attorneys, or otherwise necessary to the communication, or whether they are on the other hand third parties with no relationship to GC International.  Cohen thus has not met his burden of establishing that communications involving unidentified individuals were made in confidence.  For these reasons, the Court finds that the log is inadequate to assess the claim of privilege with respect to these documents and the privilege is thus waived for the following documents:  PL-0209, PL-0221, PL-0433-509, PL-0954, PL-2144, PL-2158, PL-3169-69A, PL-3199-3200, PL-3201-03, PL-3204, PL-3205-09 and PL-3614.

## C.  Did Cohen Waive the Privilege Regarding Other Documents?

Although the Court has in light of the foregoing concluded that the majority of the communications at issue are privileged, the Court still must consider whether Cohen has waived any privilege through statements made to others or in court pleadings filed in connection with the Canadian litigation and the present case.  The Court finds that he has not.

"Ordinarily, deliberate disclosure of a privileged communication, where no privilege protects this further disclosure, waives a communication privilege."  *United States v. Rakes*, 136 F.3d 1, 5 (1st Cir. 1998).  "Not every passing reference to counsel will, however, trigger a waiver of the privilege*." United States v. Gorski*, 36 F. Supp. 3d 256, 268 (D. Mass. 2014)(citing *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989).  To determine whether particular statements waive privilege, courts focus on whether the *substance* of the privileged communication has been

divulged.  For that reason, merely disclosing that an attorney was involved in a particular matter,

or the general subject matter regarding which the attorney was consulted, will not be enough to

constitute a waiver.  *U.S. v. White*, 887 F.2d 267, 270-71 (D.C. Cir. 1989)(testimony that

attorney had "thoroughly received the decision to employ [a particular person] after . . . looking

at the matter from nine different ways" not a waiver); *U.S. Ethernet Innovations LLC v. Acer,*

*Inc.*, No. C 10-03724, 2014 WL 3570749 (N.D. Cal. Jul. 17, 2014)(testimony regarding due

diligence process and ultimate conclusion that patents were valid not a waiver where substance

of attorney's advice was not disclosed); *In re Fortune Natural Res. Corp.*, 350 B.R. 270, 275

(E.D. La. 2005)(testifying regarding whether attorney provided advice on a particular issue is not

a waiver).

By contrast, disclosing the content of a request for legal advice is a waiver, as is

disclosing details regarding the advice provided.  *Trustees of Boston University v. Everlight*

*Electronics Co., Ltd.*, No. 12-cv-11935, 2015 WL 3407555 (D. Mass. May 27, 2015)(client

disclosure during deposition that company had prepared an analysis of specific patents for

purposes of obtaining legal advice and that attorney provided a no infringement opinion on the

basis of that analysis resulted in limited waiver of privilege); *In re Grand Jury Proceedings*

*October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996)(disclosing to investigator that laboratory had

provided its plan to its attorney and that attorney had approved specific parts of the plan and

recommended they discontinue other parts was a waiver).

Arguably more nuanced is the situation where just the attorney's ultimate conclusion is

disclosed, for example, where a communication reflects that an attorney advised a client that a

proposed course of conduct was lawful but does not otherwise explain the reasoning or rationale

underlying the opinion.  Most courts that have considered the issue have found no waiver where

a client disclosed only that an attorney opined that his conduct was lawful or consistent with the terms of a contract. *Joy Global, Inc. v. Wis. Dep't of Workforce Development*, No. 01-039-LPS, 2008 U.S. Dist. Lexis 46496 (D. Del. June 16, 2008)(disclosure that an attorney "approved a course of conduct" is not a waiver); *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 694 (S.D. Fla. 2009)(disclosure that attorney advised that proposed rate increase did not violate terms of contract did not waive privilege); *Rates Technology, Inc. v. Elcotel, Inc.*, 118 F.R.D. 133, 134 (M.D. Fla. 1987)(press release stating that "patent counsel has determined that we are not in violation" of a particular patent is not a waiver).  To be sure, at least one court has held that an attorney's conclusion is "the most important part of the privileged communication," and cannot be disclosed without waiver. *Electro Sci. Indus., Inc. v. Gen. Scanning, Inc.*, 175 F.R.D. 539, 543 (N.D. Cal. 1997).  Notwithstanding *Electro Sci. Indus., Inc.*, the focus in these express waiver cases is whether the substance or content of a privileged communication has been disclosed.  In this Court's view, that is a reasonable approach and it is one applied here.

The defendants argue that Cohen has waived any privilege by disclosing select privileged communications during his deposition testimony in the Canadian litigation, and in the declarations he filed in this case.  However, none of the statements identified by the defendants discloses the substance of any privileged communications.  Most of the statements merely state that privileged communications occurred, or disclose the general subject matter for which legal advice was sought.  (See, *e.g.*, Dkt. No. 334-53 at ¶¶ 10 ["The procedure to cause the official governmental registration of the transfer of the Garrison Asia LLC shares to me was commenced in late January 2011 by the Mongolian office of the law firm of Lehman Lee & Xu ("LLX") as the result of a direct, in-person instruction that I gave to Jay Liotta, Esq."])   A few of Cohen's

statements go so far as to disclose an attorney's ultimate conclusion that his conduct was lawful. (See, *e.g.*, Dkt. No. 334-53 at ¶ 11 ["It was my understanding after discussion with Mr. Liotta, the contents of which are privileged, that registration of the transfer was legal under Mongolian law"])  As discussed, without more detail, such statements are insufficient to waive the privilege because they do not disclose the content of the privileged communication and, indeed, reflect a conscious intent to avoid divulging communications believed to be privileged.  Finally, some of the statements the defendants point to do not even concern legal advice at all.  For example, the defendants cite to declaration testimony concerning discussions between Cohen and defendant Krueger, (Dkt. No. 334-53 at ¶ 16 ["I had met with Blair Krueger at Garrison Asia's office on or about the morning of January 24, 2011, and we were the only two participants in that meeting. We met to discuss my concern about the several defaults that had occurred under the Note of which I had become aware."]), the plaintiff's discussions with third parties such as the police, (Dkt. No. 298-8 at p. 7 ["I believe my client has already confirmed that the alleged threats were reported by him through Mr. Neelon, okay, to the police."]; Dkt. No. 298-9 at p. 6), and the plaintiff's performance of non-legal administrative tasks.  (Dkt. No. 298-8 at p. 4 ["I said: 'Please take the stamp on behalf, that we do not get into a further hole with . . . financial hole with Krueger and Bainbridge.' And he, at my request, took it."])  These statements might at some level reflect some interaction with an attorney but they do not facially discuss whether legal advice was sought or obtained and certainly do not disclose the substance of any legal advice.  In short, none of these statements amounted to a waiver of the attorney-client privilege.[1]

---

[1]Finally, Cohen argues that the Court should apply Canadian law in considering the defendants' express waiver argument because Canadian law is more protective of the attorney-client privilege than American law and thus should be the favored law under a choice of law analysis.  The Court need not reach this issue.  A conflict of laws analysis is necessary only where there is a difference in the way the forum (i.e., the District of Massachusetts) and other potentially interested jurisdictions would decide the issue.  For example, Restatement (Second) Conflict of Laws § 139, which deals with privileged communications, applies only to the treatment of evidence that is privileged in one jurisdiction and not privileged in another.  Here, because the Court has found that Cohen's

### III.   CONCLUSION

On the basis of its analysis above, the motion for a protective order is ALLOWED in part and DENIED in part.  Cohen has not met his burden of establishing a privilege shielding from disclosure the following documents:  PL-0209, PL-0221, PL-0433-509, PL-0954, PL-2144, PL-2158, PL-3169-69A, PL-3199-3200, PL-3201-03, PL-3204, PL-3205-09 and PL-3614.  The motion for a protective order with respect to these documents is therefore DENIED and the documents must be produced within seven days of this Order.   The Court finds that the remaining documents identified on Cohen's privilege log (i.e. all other documents identified in categories A through D and the balance of the documents identified in category E) are privileged and that the privilege has not been waived.  The motion for a protective order is therefore ALLOWED with respect to those documents.  Neither Cohen, nor the plaintiff shall be compelled to produce or testify about any of the documents the Court has found to be privileged.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  July 14, 2015

---

disclosures are not sufficient to expressly waive privilege in either Canada or this district, there is no conflict with Canada's more protective privilege law and thus no need to consider this issue further.