UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DANIEL P. NEELON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 12-cv-11198-IT |
| BLAIR KRUEGER and DESERT EAGLE | * | |
| RESOURCES, LTD. f/k/a GARRISON | * | |
| INTERNATIONAL, LTD., | * | |
| | * | |
| Defendants. | * | |

ORDER ON RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
FOR LACK OF PERSONAL JURISDICTION

June 17, 2016

TALWANI, D.J.

Defendants Blair Krueger and Desert Eagle Resources, Ltd. f/k/a Garrison International

Ltd. move, pursuant to Fed. R. Civ. P 50(b), for judgment as a matter of law for lack of personal

jurisdiction. Defendants assert that Plaintiff did not provide sufficient evidence at trial to

establish that the court had personal jurisdiction over Defendants. The court finds that Plaintiff

has met his burden at trial. Accordingly, the court DENIES Defendants' motion.

I.    Procedural History

This is not Defendants' first challenge to this court's jurisdiction. At the outset of this

litigation, Defendants moved to dismiss Plaintiff's Amended Complaint [#18] for lack of

personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). In considering the motion, the court

(Saylor, D.J.) applied the *prima facie* standard, taking the specific facts affirmatively alleged by

the plaintiff as true. Mem. & Order on Defs.' Mot. Dismiss 7 [#43]. The court determined that

Plaintiff had met his burden of demonstrating that the exercise of jurisdiction was consistent with the due process requirements of the United States Constitution. Id. at 8-16. Defendants moved, pursuant to 28 U.S.C. § 1292(b), to amend the decision to state that there is a substantial ground for difference of opinion and that an immediate appeal from the Order denying the motion to dismiss may materially advance the ultimate resolution of this litigation. Defs.' Mot. Amend Order, Certify Appeal & Stay Proceedings Pending Appeal [#48]. The court denied the motion. Electronic Order [#56].

After the case was reassigned to the undersigned and following discovery, Defendants moved for summary judgment on several grounds, including that Plaintiff failed to produce evidence to support a finding of personal jurisdiction. Defs.' Mot. Summ. J. [#321]. The court rejected Plaintiff's contention that the issue of personal jurisdiction had been finally resolved on the motion to dismiss. The court explained that a finding of personal jurisdiction under the prima facie standard is "an implicit deferral until trial of the final ruling on [personal] jurisdiction." Mem. & Order 19 [#368] (citing Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 678 (1st Cir. 1992) (stating that resolution under the prima facie standard "avoids . . . issues of . . . 'law of the case'")). The court treated the pre-trial motion as one for reconsideration and denied it based on the record evidence previously cited by the court in support of the prior finding of personal jurisdiction under the *prima facie* standard.

The case proceeded to trial on Plaintiff's cause of action for defamation. After Plaintiff rested at trial, Defendants moved for judgment as a matter of law based on a lack of evidence to establish personal jurisdiction. Mot. J. Matter Law Pl.'s Lack Evid. Establish Personal Jurisdiction [#557]. The court denied the motion, finding that the evidentiary proffer in Plaintiff's case-in-chief sufficient to overcome the motion. Order Denying Mots. J. Matter Law

[#565]. At the conclusion of trial, Defendants filed the <u>Renewed Motion for Judgment as a Matter of Law Under Fed. R. Civ. P. 50(b) Based on Plaintiff's Lack of Evidence to Establish Personal Jurisdiction</u> [#626] ("Renewed Motion"), now before the court.

## II.     Standard of Review

A motion for judgment as a matter of law under Fed. R. Civ. P. 50 "may only be granted when, after examining the evidence of record and drawing all reasonable inferences in favor of the non-moving party, the record reveals no sufficient evidentiary basis for the verdict." <u>Crowe v. Bolduc</u>, 334 F.3d 124, 134 (1st Cir. 2003) (internal quotation marks omitted).

"When a party makes a motion post-trial re-alleging a lack of personal jurisdiction, the party may request, or the judge may determine on his own, to make the jurisdictional inquiry in light of the facts that were revealed at trial using a preponderance of the evidence standard." <u>N. Laminate Sales, Inc. v. Davis</u>, 403 F.3d 14, 23 (1st Cir. 2005). The court views Defendants' post-trial motion as making such a request and accordingly, uses the preponderance of the evidence standard in the inquiry as to the jurisdictional facts revealed at trial.

## III.     Personal Jurisdiction

To establish personal jurisdiction over Defendants, Plaintiff "must meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." <u>Cossart v. United Excel Corp.</u>, 804 F.3d 13, 18 (1st Cir. 2015). Plaintiff has done both.

### a.   *Federal Constitution*

In the context of specific jurisdiction, the Constitution requires that a defendant have maintained "minimum contacts" with the forum, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326

U.S. 310, 316 (1945) (internal quotation marks omitted). Whether minimum contacts exist is assessed through a tripartite test. First, "the litigation [must] result[] from alleged injuries that 'arise out of or relate to'" the defendant's in-forum activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations omitted). Second, there must be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws.'" Id. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Third, the defendant's conduct and activities much be such that it is "'reasonable . . . to require the [defendant] to defend'" a suit in the chosen forum. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (quoting Int'l Shoe, 326 U.S. at 317).

      i.    *Relatedness*

"The evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." Harlow v. Children's Hosp., 432 F.3d 50, 60-61 (1st Cir. 2005). In Harlow, the First Circuit explained that relatedness "requires a showing of a material connection," and that "the defendant's in-[forum] conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case." Id. at 61 (quoting Marino v. Hyatt Corp., 793 F.2d 427, 430 (1st Cir.1986)). The Supreme Court has repeatedly explained, however, that "the tort of libel is generally held to occur wherever the offending material is circulated." Walden v. Fiore, 134 S.Ct. 1115, 1124 (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777 (1984)). Thus, in Calder v. Jones, 465 U.S. 783 (1984), "the in-forum publication and the in-forum injury were clearly related to the plaintiff's defamation suit, so the Supreme Court did not need to address the relatedness prong before proceeding to the purposeful availment inquiry." U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610, 624 (1st Cir. 2001)

Similarly here, the evidence at trial demonstrated that Defendants published the press releases broadly, including in Massachusetts, through an on-line distributor, and that Plaintiff was injured in Massachusetts by the publication in Massachusetts.

   *ii.* *Purposeful Availment*

Purposeful availment is "satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." United States v. Swiss Am. Bank, Ltd., 274 F.3d, 610, 623-24 (1st Cir. 2001). In Burger King, the Supreme Court recognized that the "absence of physical contacts" by a defendant in the forum state cannot "defeat personal jurisdiction there" as long as the defendants' "efforts were 'purposefully directed' towards residents" of the forum state. 471 U.S. at 476 (citations omitted). In the absence of a defendant's physical presence in a forum, the court may look "for some other indication that the defendant reached into the forum, such as mail or telephone contacts." Swiss Am. Bank, 274 F.3d at 622.

"The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir.1995) (quoting Keeton, 465 U.S. at 774). "The cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." Sawtelle, 70 F.3d at 1391, (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1994)). Thus, while the Supreme Court in Calder has approved the use of "an effects test for determining purposeful availment in the context of defamation cases," the test still requires that "the defendants must have acted toward the forum state with sufficient intent to make them 'reasonably anticipate being haled into court there.'" Noonan v.

Winston Co., 135 F.3d 85, 90 (1st Cir. 1998) (citing Calder, 465 U.S. at 790-91, and quoting

World–Wide Volkswagen, 444 U.S. at 297). "In Calder, the court found that the defendants'

intentional conduct was 'calculated to cause injury'" to respondents in the forum state. Noonan,

135 F.3d at 90 (quoting Calder, 465 U.S. at 791) (emphasis added by the First Circuit); see also

Hugel v. McNell, 886 F.2d 1, 5 (1st Cir. 1989) (complaint alleging that defendants committed an

intentional tort, directed their actions toward the forum state, and knew that the brunt of the blow

caused by release of the libelous material would be felt in the state where plaintiff resides and

has an established reputation could be read as establishing that defendants could reasonably

expect to be haled into the forum state court to answer for their conduct).

Here, the evidence at trial demonstrated that: the content of the press release was

determined by Defendants, not TSX Venture Exchange ("TSX") as Defendants had claimed;

Defendants intended that the press release be broadly published by an on-line distributor with a

Boston office; and Defendants intended harm to Plaintiff's law practice in Massachusetts by

gratuitously identifying him as a member of the Massachusetts Bar Association in the

defamatory press release.

    *iii.*    *Reasonableness*

The third step of the due process analysis is based on "gestalt factors" that bear upon the

overall fairness of subjecting nonresidents to this court's jurisdiction. As the court explained in

denying Defendants' motion to dismiss, these factors are: "(1) the defendant's burden in

appearing in the court; (2) the forum state's interest in hearing the suit; (3) the plaintiff's

convenience and interest in effective relief; (4) the judicial system's interest in obtaining the

most effective resolution of the controversy; and (5) the common interests of all interested states

in promoting substantive social policies." Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34,

45 (D. Mass. 1997) (quoting <u>Burger King</u>, 471 U.S. at 477). The court previously found that Defendants had claimed no special or unusual burden in defending this case, Massachusetts had a clear interest in the outcome of this dispute, Plaintiff had a clear interest in litigating his claims in his home state, Massachusetts law would apply, Defendants had not countered Plaintiffs' assertion that he would face a crushing financial burden to pursue the action in Canada, and the common interest of all sovereigns was neutral or cutting slightly in favor of a finding of personal jurisdiction over the Defendants. Defendants offer no grounds for reconsideration of the court's finding that these "gestalt factors" cut in favor of the exercise of the court's jurisdiction.

   b.  *Massachusetts Long-Arm Statute*

   In <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 205 (1st Cir. 1994), the First Circuit explained that the applicable Massachusetts long-arm statute concerning torts committed by persons who have no ongoing relationship with the forum state is Mass. Gen. Laws ch. 223A, § 3(c). The court found that the state-law issues in that defamation case were "extremely murky" and because the plaintiff's case did not pass constitutional muster, the court bypassed the statutory phase. <u>Id.</u> Having concluded here, however, that the constitutional requirements have been met, the court turns to the Massachusetts statute.

   Section 3(c) provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . causing tortious injury by an act or omission in this commonwealth . . . ." Mass. Gen. Laws ch. 223A, § 3(c). As noted above, the tort of libel is generally held to occur wherever the offending material is circulated. <u>Walden v. Fiore</u>, 134 S.Ct. 1115, 1124 (2014) (quoting <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 777 (1984)). This is so "because publication to third persons is a necessary element of libel" and thus that intentional tort "actually occurred" where

publication occurred. <u>Walden</u>, 134 S. Ct. at 1124 (citing Restatement (Second) of Torts § 558).

Plaintiff demonstrated at trial that the on-line posting resulted in publication in Massachusetts.

Defendants argue, however, that Plaintiff "presented no evidence that Defendants caused

harm 'by an act or omission *in this commonwealth* . . . .'" Renewed Mot. 3 [#624] (emphasis

added by Defendants). In Defendants' view, even if Defendants intentionally published

defamatory material in Massachusetts, no act or omission by Defendants can be said to have

occurred in Massachusetts because the publication was placed on-line from a computer in

Canada. In <u>Ticketmaster-New York</u>, 26 F.3d at 205, the First Circuit found a similar argument

regarding a phone call where defendant was out of state "logical" and "intuitive," but not easily

reconciled with an earlier decision where the court had found that "an allegedly tortious act

committed outside the borders of Massachusetts, purposefully directed at the state and intended

to cause injury there, could constitute an in-forum act within the meaning of section 3(c)."

<u>Ticketmaster-New York</u>, 26 F.3d at 205 & n.5 (citing <u>Murphy v. Erwin-Wasey</u>, 460 F.2d 661,

664 (1st Cir. 1972)).

In <u>Murphy</u>, the court had held that the long arm statute's requirements were met when the

defendant sent false statements by mail or telephone into Massachusetts, intending that those

statements be relied upon in Massachusetts, and causing injury to a Massachusetts resident. 460

F.2d at 664. The <u>Murphy</u> court had looked approvingly to <u>Buckley v. New York Post Corp.</u>, 373

F.2d 175, 179 (2d Cir. 1967), where the Second Circuit found the analogous Connecticut statute

to assert jurisdiction over an out of state "publisher whose newspaper was distributed in

Connecticut containing an article alleged to libel a Connecticut resident." <u>Id.</u> (citing <u>Buckley</u>,

373 F.2d 175). The <u>Buckley</u> court had concluded that sending a libel into a state is

indistinguishable from "the frequently hypothesized but rarely encountered gunman firing across

a state line." Id. The Murphy court reasoned that the fraudulent misrepresentation at issue there involved knowing and intentional conduct resulting in an in-state injury constituted an in-state act. Id.

Subsequent decisions in the Massachusetts courts have adopted Murphy, carefully reading that decision as directed at intentional tortious misconduct (but not negligent conduct) resulting in an injury in Massachusetts. See e.g. Burtner v. Burnham, 430 N.E.2d 1233, 1236-37 (Mass. App. Ct. 1982) (finding personal jurisdiction over real estate agent, a New Hampshire resident, under G.L. c. 223A, § 3(c), where agent knowingly misrepresented size of parcel and plaintiffs relied upon misrepresentation); see also Rye v. Atlas Hotels, Inc., 566 N.E.2d 617, 619-20 (Mass. App. Ct. 1991), disapproved on other grounds in Tatro v. Manor Care, Inc., 625 N.E.2d 549, 554 n.5 (Mass. 1994) (finding out-of-State defendant's attorney's intentional misrepresentations by telephone and mail sufficient to provide jurisdiction under section 3(c)); cf. Lyons v. Duncan, 968 N.E.2d 412, 416 (Mass. App. Ct. 2012) (rejecting assertion of jurisdiction for negligent misrepresentation claim as section 3(c) "distinguishes between intentional and negligent acts"). Massachusetts trial courts have similarly found that a defamatory statement made out of state or on the internet "constitutes an in-forum act for the purposes of [section 3(c)], if it is purposefully directed towards a Massachusetts resident and intended to cause harm in Massachusetts." Edozien v. XS Micro, LLC, No. MICV201305066F, 2014 WL 1260511, at *2 (Mass. Super. Ct. Mar. 7, 2014) supplemented, No. MICV201305066F, 2014 WL 1260516 (Mass. Super. Ct. Mar. 14, 2014); see also Let's Adopt! Global, Inc. v. Macey, No. WOCV201300576B, 2015 WL 2062190, at *11 (Mass. Super. Ct. Mar. 19, 2015) (making the same point without deciding the long-arm issue).

The First Circuit has not resolved the question of whether the reasoning in Murphy also applies in the defamation context. In Ticketmaster-New York, the First Circuit noted that the court's interpretation of section 3(c) in Murphy is worded in general terms and "conceivably could be extended to the defamation context," though the court expressed its "profound reservations" to do so. 26 F.3d at 205. The court's reservations were not surprising in that case, for although the complaint alleged that the defendant conveyed certain defamatory statements with the requisite intent and that he knew when he responded to the Boston Globe reporter's inquiry that his comments would inform a story slated for publication in a newspaper circulated chiefly in Massachusetts, the plaintiff did not allege defendant had initiated or solicited in any way the telephone conversation at issue. Id. at 203-04. The First Circuit was also skeptical that the defendant had made any remark "of and concerning" the plaintiff, and thus harbored doubts whether the defendant can be said to have inflicted any "tortious injury" within the meaning of section 3(c). Id. at 205.

Here, in contrast, Plaintiff has demonstrated that Defendants initiated and drafted the press release, gratuitously included Plaintiff's name and membership in the Massachusetts bar, and published the press release to readers in Massachusetts by distributing it through the Marketwire Report, intending to cause damages in Massachusetts. On these facts, the defamatory statement was purposefully directed towards Massachusetts residents and intended to cause harm in Massachusetts and thus constitutes an in-forum act for the purposes of section 3(c). As such, the requirements for personal jurisdiction under the Massachusetts long-arm statute are met. Murphy, 460 F.2d at 664.

*c. Conclusion*

In sum, Plaintiff has demonstrated by a preponderance of the evidence that Defendants have maintained "minimum contacts" with the forum, "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice" and that Defendants' tortious misconduct resulting in publication in Massachusetts residents with the intent to cause harm in Massachusetts constitutes an in-forum act for the purposes of section 3(c).

For the foregoing reasons, Defendants' <u>Renewed Motion for Judgment as a Matter of law Under Fed. R. Civ. P. 50(b) Based on Plaintiff's Lack of Evidence to Establish Personal Jurisdiction</u> [#626] is DENIED.

IT IS SO ORDERED.

June 17, 2016                                                              /s/ Indira Talwani_____
                                                                          United States District Judge